[No. B133778. Second Dist., Div. Five. Feb. 17, 2000.]

In re RASHAD H. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Plaintiff and Respondent, v.
STEVEN H., Defendant and Appellant.

## COUNSEL

Nancy E. B. Nager, under appointment by the Court of Appeal, for Defendant and Appellant.

Lloyd W. Pellman, County Counsel, and Jerry M. Custis, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**TURNER, P. J.**—Steven H., the father, has appealed from an order terminating parental rights to the minors, Rashad and Brandon H., pursuant to Welfare and Institutions Code section 366.26. Counsel for the father and the Los Angeles County Department of Children and Family Services (the department) have stipulated that the Welfare and Institutions Code section 366.26 parental termination rights order may be reversed and the remittitur issued forthwith. After complying with the new provisions of Code of Civil Procedure section 128, subdivision (a)(8) which were effective January 1, 2000, we accept the stipulation and reverse the Welfare and Institutions Code section 366.26 order.

■ The father's opening brief argues that he did not receive proper notice of the Welfare and Institutions Code section 366.26 hearing. The department agrees that the father did not receive proper notice of the Welfare and Institutions Code section 366.26 hearing. We have independently reviewed the record and it reveals the following. The case was set for a Welfare and Institutions Code section 366.26 hearing on March 18, 1999. Counsel was appointed for the minors at the March 18, 1999, hearing at which the father was present. Otherwise, the matter was continued to April 20, 1999. The father was not present at the April 20, 1999, hearing. The April 20, 1999, Welfare and Institutions Code section 366.26 hearing was then continued again to May 20, 1999. The father was not present at the May 20, 1999, Welfare and Institutions Code section 366.26 hearing. Because there were no birth certificates available on May 20, 1999, the Welfare and Institutions Code section 366.26 hearing was continued yet again to May 24, 1999. On May 24, 1999, the trial court entered the order terminating parental rights and the father was not present. Further, the father's counsel was not present. There is nothing in the record to indicate directly or inferentially that the father had any notice of the Welfare and Institutions Code section 366.26 proceedings occurring after April 20, 1999. The parties are in agreement that there was noncompliance with the notice requirements of Welfare and Institutions Code section 366.23, subdivision (a).[1]

Prior to January 1, 2000, our power to accept a stipulation to reverse extended to any case except when there was a showing of extraordinary

---

[1]Welfare and Institutions Code section 366.23, subdivision (a) provides: "(a) Whenever a juvenile court schedules a hearing pursuant to Section 366.26 regarding a minor, it shall direct that the fathers, presumed and alleged, and mother of the minor, the minor, if 10 years of age or older, and any counsel of record, shall be notified of the time and place of the proceedings and advised that they may appear. The notice shall also advise them of the right to counsel, the nature of the proceedings, and of the requirement that at the proceedings the court shall select and implement a plan of adoption, legal guardianship, or long-term foster care for the minor. In all cases where a parent has relinquished his or her child for the purpose of adoption, no notice need be given to that parent. Service of the notice shall be completed at

circumstances. The relevant rule was set forth in *Neary v. Regents of University of California* (1992) 3 Cal.4th 273, 284 [10 Cal.Rptr.2d 859, 834 P.2d 119], where our Supreme Court held: "We hold that, when the parties to an action agree to settle their dispute and as part of their settlement stipulate to a reversal of the trial court judgment, the Court of Appeal should grant their request for the stipulated reversal absent a showing of extraordinary circumstances that warrant an exception to this general rule. Any determination that such circumstances exist must be made on a case-by-case basis. Because we can only speculate as to the facts of future cases, we cannot enumerate with any specificity what facts may or may not constitute an extraordinary circumstance that would warrant denying the parties' request. We emphasize, however, that the policies favoring settlement are strong and that the extraordinary-circumstance exception is narrow."

However, effective January 1, 2000, the power of an appellate court to accept a stipulation to reverse a judgment was materially modified by the Legislature. Code of Civil Procedure section 128, subdivision (a)(8) now provides: "An appellate court shall not reverse or vacate a duly entered judgment upon an agreement or stipulation of the parties unless the court finds both of the following: [¶] (A) There is no reasonable possibility that the interests of nonparties or the public will be adversely affected by the reversal. [¶] (B) The reasons of the parties for requesting reversal outweigh the erosion of public trust that may result from the nullification of a judgment and the risk that the availability of stipulated reversal will reduce the incentive for pretrial settlement." The express purpose of the 1999 amendment to Code of Civil Procedure section 128, subdivision (a)(8) was set forth in the Legislative Counsel's Digest of Assembly Bill No. 1676 introduced and passed during the 1999-2000 Regular Session, which states: "Existing law authorizes an appellate court to reverse a trial court judgment upon the stipulation of the parties, as specified. [¶] This bill would prohibit an appellate court from reversing or vacating a duly entered judgment upon an agreement or stipulation of the parties unless the court finds that there is no reasonable possibility that the interests of nonparties or the public will be adversely affected by the reversal, and that the reasons of the parties for requesting reversal outweigh the erosion of public trust that may result from the nullification of a judgment and the risk that the availability of stipulated reversal will reduce the incentive for pretrial settlement."

least 45 days before the date of the hearing, except in those cases where notice by publication is ordered in which case the service of the notice shall be completed at least 30 days before the date of the hearing. If the petitioner is recommending termination of parental rights, notice of this recommendation shall be either included in the notice of a hearing scheduled pursuant to Section 366.26 and served within the time period specified in this subdivision or provided by separate notice to all persons entitled to receive notice by first-class mail at least 15 days before the scheduled hearing."

Application of these statutory provisions to the present case allows us to accept the stipulation. To begin with, the stipulated reversal in this case will not adversely affect the rights of any nonparty or the public. (Code Civ. Proc., § 128, subd. (a)(8)(A).) We acknowledge that in some cases a stipulated reversal may *potentially* adversely effect the rights of the prospective adoptive parents. It is generally in the interest of potential adoptive parents to have the parental rights termination process end at the earliest possible date. Reversing a Welfare and Institutions Code section 366.26 order does not advance the adoptive process, generally to the detriment of the prospective adoptive parents. That typical scenario is not present in this case. The evidentiary record, based on the department's reports, is as follows. The minors have been suitably placed with foster parents for some time. Prospective adoptive parents have been identified by the department. However, as of the date of the Welfare and Institutions Code section 366.26 order, the minors had not lived with the potential adoptive parents. We have no record as to what has occurred since the Welfare and Institutions Code section 366.26 order.

As noted previously, the typical Welfare and Institutions Code section 366.26 appeal involves a minor already living with the adoptive parents. Under those circumstances, there could be an adverse effect on the adoptive parents' rights if there were a stipulated reversal of a Welfare and Institutions Code section 366.26 parental termination rights order. A stipulated reversal could further delay the conclusion of the adoption process. In the present case, the adverse effect on the prospective adoptive parents is mitigated somewhat. The minor has never lived with the prospective adoptive parents. However, there are additional considerations present in this case. In this case, on balance, the stipulated reversal will advance the prospective adoptive parents' rights. Without the stipulated reversal, resolution of the present case will be delayed to allow the filing of the respondent's and reply briefs, oral argument, and the preparation of a written opinion. Upon issuance of an opinion, one that the parties in this case agree would reverse the Welfare and Institutions Code section 366.26 parental rights termination order, the decision would not be final for 30 days. (Cal. Rules of Court, rule 28(a); *Oakland v. Pacific Coast Lumber etc. Co.* (1916) 172 Cal. 332, 337 [156 P. 468].) Further, if a petition for review were filed, the time for issuance of the remittitur would be further delayed; hence, additionally increasing the time for making a determination whether to terminate parental rights and select adoption as the permanent plan. If review were to be granted, there could be further delays. The stipulation to reverse materially advances the pace of the decisionmaking process, which actually on the whole benefits the potential adoptive parents, who are the only nonparties whose rights are at issue. The potential adoptive parents have a clear interest

in an on the merits decision which is made at the earliest possible date. To refuse to accept the proposed stipulated reversal in this case will only unnecessarily delay that process. When all of the facts are considered, the potential adoptive parents' rights are advanced rather than negatively affected by the stipulated reversal in this case. The same is true in terms of the public's rights. Thus, this first factor in Code of Civil Procedure section 128, subdivision (a)(8)(A), the fact that "no reasonable possibility that the interests of nonparties or the public will be adversely affected by the reversal," does not prohibit acceptance of the parties' agreed-to appellate disposition.

The second factor, which is set forth in Code of Civil Procedure section 128, subdivision (a)(8)(B), "[t]he reasons of the parties for requesting reversal outweigh the erosion of public trust that may result from the nullification of a judgment," permits us to accept the stipulated reversal. The reasons the parties are requesting reversal—there was judicial error and parental rights have been terminated without notice in violation of Welfare and Institutions Code section 366.23, subdivision (a)—are important considerations to the public and the legal community. Further, it is difficult to conceive how the stipulated reversal in this case will erode public trust. Rather, public trust will be advanced because the department and the father's counsel have taken intelligent steps to expedite the resolution of the appeal and the return of this case to the juvenile court for a decision on the merits. Lawyers have a duty to resolve disputes on appeal and in the trial courts if it is possible and appropriate. Public trust in the legal profession and the judiciary is advanced by settlements such as the stipulated reversal in the present case, which is premised on an actual judicial error in the trial court.

The third factor, "the risk that the availability of stipulated reversal will reduce the incentive for pretrial settlement," (Code Civ. Proc., § 128, subd. (a)(8)(B)) does not militate against acceptance of the stipulated reversal. There is no evidence that settlement is an option in connection with the Welfare and Institutions Code section 366.26 issues which will be addressed upon issuance of the remittitur. Moreover, the parties are in agreement that the case will be reversed anyway; so there is no risk that a stipulated reversal will reduce the incentive for settlement prior to the Welfare and Institutions Code section 366.26 hearing.

Taken collectively and singularly, none of the factors listed in Code of Civil Procedure section 128, subdivision (a)(8) preclude us from accepting the stipulated reversal. No doubt, applying the new provisions of Code of Civil Procedure section 128, subdivisions (a)(8) is to be done by an appellate court on a case-by-case basis. In the present case, the parties have identified a specific error occurring in the trial court that would lead to a reversal of the

parental rights termination order of May 24, 1999. They have professionally sought to promptly resolve the matter and in doing so do have not in any fashion denigrated the integrity of the judicial branch; in fact they have advanced respect for the courts and their judgments.

The May 24, 1999, Welfare and Institutions Code section 366.26 parental rights termination order is reversed. The juvenile court is to conduct a new Welfare and Institutions Code section 366.26 selection and implementation hearing after giving notice to the father, Steven H., which fully complies with Welfare and Institutions Code section 366.23, subdivision (a). The remittitur is to issue forthwith.

Grignon, J., and Weisman, J.,* concurred.

On March 2, 2000, the opinion was modified to printed above.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.